Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WANDY NOVA<br><br>         Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>         Defendant. | Civil Action No. 19-18145 (ES)<br><br>OPINION |

**SALAS, DISTRICT JUDGE**

  Before the Court is plaintiff Wandy Nova's ("Plaintiff") appeal of the Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 9.1(f). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons below, the Court AFFIRMS the Commissioner's decision.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

  On November 2, 2015, Plaintiff filed an application for DIB and an application for SSI, alleging disability beginning March 22, 2014, due to human immunodeficiency virus ("HIV"), back problem, major depression, and asthma. (D.E. No. 5, Administrative Record ("R.") at 107). The claims were initially denied on March 10, 2016 (*id.*) and was denied again on August 15, 2016, upon reconsideration (*id.* at 138). On September 29, 2016, Plaintiff filed a written request

for a hearing before an Administrative Law Judge, and the hearing was held on June 4, 2018, before Administrative Law Judge Dennis O'Leary ("the ALJ"). (*Id.* at 34 & 259–60). The ALJ issued a decision on August 6, 2018, denying Plaintiff's applications for DIB and SSI. (*Id.* at 17–28). Plaintiff sought review from the Appeals Counsel. (*Id.* at 1). After the Appeals Counsel denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision.

Plaintiff filed the instant appeal on September 20, 2019. (D.E. No. 1). On September 30, 2020, Plaintiff filed a brief in support of the instant appeal (D.E. No. 14 ("Pl. Mov. Br.")), to which Defendant responded on October 16, 2020 (D.E. No. 15 ("Def. Opp. Br.")).

## II. LEGAL STANDARD

### A. Standard of Review

The Court applies plenary review to questions of law and otherwise applies the standard of "substantial evidence." *See* 42 U.S.C. § 405(g); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). While failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

The Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational

interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 283 (3d Cir. 2006). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

Regarding the ALJ's assessment of the record, the Third Circuit has stated, "[a]lthough the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). The Third Circuit has noted, however, that "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather, the function of *Burnett* is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

### B. Determining Social Security Benefits

To qualify for disability insurance benefits, the claimant must first establish that she is "disabled." *See* 42 U.S.C. § 423(a)(1)(E). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Massanari,* 247 F.3d 34, 38–39 (3d Cir.2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is an "impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Secretary of Health and Human Services has established a five-step sequential evaluation process to determine whether a plaintiff is disabled. *See* 20 C.F.R. §§ 404.1520 & 416.920. If the determination at a particular step is dispositive of whether the plaintiff is or is not disabled, the inquiry ends. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4). The burden rests on the plaintiff to prove steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden of production shifts to the government. *Id.*

At step one, the plaintiff must demonstrate that she has not engaged in any substantial gainful activity since the onset date of her severe impairment. 20 C.F.R. §§ 404.1520(a)(4)(i) & 416.920(a)(4)(i). Substantial gainful activity is defined as significant physical or mental activities that are usually done for pay or profit. 20 C.F.R. §§ 404.1572(a) & 416.972(a), (b). If an individual engages in substantial gainful activity, she is not disabled under the regulation, regardless of the severity of her impairment or other factors such as age, education, and work experience. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the plaintiff demonstrates she has not engaged in substantial gainful activity, the analysis proceeds to step two.

At step two, the plaintiff must demonstrate that her medically determinable impairment or the combination of his or her impairments is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii) & 416.920(a)(4)(ii). A "severe" impairment significantly limits a plaintiff's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). An impairment or combination of impairments do not satisfy this threshold if medical and other evidence only establishes slight abnormalities which have no more than a minimal effect on an individual's ability to work. *See Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

At step three, the ALJ must assess the medical evidence and determine whether the plaintiff's impairments meet or equal an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 ("Listing"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) & 416.920(a)(4)(iii).

If a plaintiff is not found to be disabled at step three, the analysis continues to step four in which the ALJ determines whether the plaintiff had the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv) & 416.920(a)(4)(iv). If the plaintiff lacks the RFC to perform any work she had done in the past, the analysis continues to the next step.

In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the plaintiff can perform based on her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v).

## III. DISCUSSION

### A. The ALJ's Decision

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since March 22, 2014, the date Plaintiff claimed that she was disabled. (R. at 20). At step two, the ALJ concluded that Plaintiff had the following seven severe impairments: back pain, carpel tunnel syndrome, post-traumatic stress disorder ("PTSD"), schizoaffective disorder, depressive type, and anxiety. (*Id.*). The ALJ concluded that Plaintiff's HIV and asthma were "non-severe impairments" since they had not caused "more than minimal limitation in [Plaintiff's] ability to perform basic work activities for 12 consecutive months." (*Id.*). At step three, the ALJ considered Listings 1.02 for major dysfunction of a joint; 1.04 for disorders of the spine; 12.03 for schizophrenia spectrum and other psychotic disorders; and 12.04 for depressive, bipolar and

related disorders. (*Id.*). The ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.* at 20–22).

At step four, the ALJ provided an analysis in light of the entire record, concluding that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain exceptions. (*Id.* at 22). Specifically, the ALJ found that Plaintiff was "capable to lifting/carrying a maximum of 20 pounds at a time and frequently lifting/carrying up to 10 pounds," that she cannot perform "continual and repetitive fine fingering tasks," that she is "capable of simple and repetitive tasks," and that she is "capable of minimal contact with supervisors and co-workers" but could not "have contact with the general public." (*Id.* at 22–26). Based on the record and the testimony of the vocational expert, the ALJ determined that Plaintiff was unable to perform any past relevant work, but the ALJ found that there were jobs that existed "in significant numbers in the national economy" that Plaintiff could perform. (*Id.* at 26–27). Accordingly, the ALJ found that Plaintiff had not been disabled as defined by the Act since March 22, 2014 through August 6, 2018, the date the ALJ rendered his decision. (*Id.* at 27–28).

### B. Consideration of Obesity

Plaintiff first argues that the ALJ's decision does not adequately analyze her obesity at step three or during the RFC analysis. (Pl. Mov. Br. at 11–21). Plaintiff contends that, while the ALJ found her obesity to be a severe impairment at step two, at steps three and four, the decision provides "no explanation, no evidence[,] and no rationale" for the ALJ's decision that Plaintiff's obesity in combination with her other impairments did not meet or equal any listing at step three, nor did the ALJ explain how Plaintiff's obesity affected her RFC. (*See id.* at 16 & 19–20). Accordingly, Plaintiff argues that the ALJ's step three and step four finding regarding her obesity

6

is beyond judicial review. (*Id.* at 18 & 20).

The Court disagrees. A review of the record shows that the ALJ properly considered Plaintiff's obesity. The ALJ acknowledged that Plaintiff's "BMI as of May 2018 was 35.53, which is obese." (*Id*. at 25). The decision also recognized that "there is no [L]isting for obesity" and concluded that, "even when obesity [was] considered in combination with the claimant's other impairments, the claimant [did] not meet or equal any of the listings in Appendix 1, Subpart P, Regulations No. 4." (R. at 21). Further, the ALJ evaluated Plaintiff's obesity within the context of the overall record. (*Id.* at 25 (stating that "[i]n the present case, obesity's effect on [Plaintiff's] other impairment [was] reflected in the above-stated residual functional capacity finding")).

But more importantly, even assuming that Plaintiff is correct and that the ALJ should have performed a better analysis at step three and step four regarding her obesity, Plaintiff fails to show how the outcome would have been different and that she was thereby harmed. Plaintiff heavily relies on *Diaz v. Commissioner of Social Securities*, where the Third Circuit stated that "[t]he ALJ must provide a discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." 577 F. 3d 500, 504 (3d. Cir. 2009) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F. 3d 112, 120) (internal quotation marks omitted). But *Diaz* does not alleviate Plaintiff from her burden of demonstrating that the ALJ's failure to discuss obesity was a harmful error. *See id.*; *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005). "Ordinary harmless error review . . . is applicable to administrative appeals." *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Where, as here, a plaintiff alleges error by the ALJ, "the burden of showing harmfulness is normally on the party attacking the agency's determination." *See Shinseki*, 556 U.S. at 398. This means that Plaintiff must affirmatively point to specific evidence and explain how she might

have prevailed at step three or step four if the ALJ's analysis had been more thorough regarding her obesity. *See Holloman*, 639 F. App'x at 814; *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016). Yet Plaintiff failed to identify any evidence in the record to support her position, let alone evidence sufficient to demonstrate that she should have succeeded at step three and step four. (*See* Pl. Mov. Br. at 11–21). The Court thus finds that substantial evidence supports the ALJ's determination at step three and step four with regard to Plaintiff's obesity; but even if the Court were to find that a portion of the pertinent analysis was deficient, Plaintiff nevertheless fails to meet her burden of demonstrating harm. *Santini v. Comm'r of Soc. Sec.*, 413 F. App'x 517, 520 (3d Cir. 2011) (finding the ALJ's consideration of obesity sufficient where the claimant did not provide evidence "indicating that her obesity ha[d] a significant effect on her functional capacity").

### C. Listing of Impairments

Next, Plaintiff argues that at step three the ALJ erred in assessing various Paragraph B criteria of the mental listings.[1] First, Plaintiff argues that the ALJ erred in finding that she had a moderate limitation in her ability to interact with others based on her ability to interact "adequately with all treating practitioners." (Pl. Mov. Br. at 25). Her ability to interact with her doctors, argues Plaintiff, was "completely irrelevant" to her ability to interact with others based on the regulatory

---

[1] With half of a sentence and a footnote, Plaintiff also argues that the ALJ failed to consider certain "objective proof" that Plaintiff suffered various physical conditions, including disc herniations and peripheral neuropathy, the impairments caused by which would have met or equaled Listings 1.02 and 11.14. (Pl. Mov. Br. at 24 n. 5). While her counsel represented to the ALJ that she had "no objections" to the record (R. at 35), Plaintiff now appears to argue that such "objective proof" was improperly omitted from the record. (Pl. Mov. Br. at 24 n.5). However, even assuming the medical records generated from 2010 to 2012 regarding Plaintiff's physical conditions were relevant to her applications at issue, which sought disability benefits from March 2014, Plaintiff does not even attempt to argue, let alone present any support, that the record before the ALJ, to which she had "no objections," was different from the record that is currently before the Court. Plaintiff thus waived her argument regarding incomplete record, and the Court will not entertain an argument that is raised for the first time on appeal. *See Armstrong v. Comm'r of Soc. Sec.*, No. 19-4606, 2020 WL 2571676, at *1 (D.N.J. May 21, 2020); *Louis v. Comm'r of Soc. Sec.*, 808 F. App'x 114, 117 (3d Cir. 2020).

definition of "interact with others." (*Id.*). Second, Plaintiff contents that the ALJ wrongfully concluded that Plaintiff only had "moderate limitations" in her abilities to "interact with others," "concentrate, persist, or maintain pace," and "adapt[ ] [or] manage[ ] oneself." (Pl. Mov. Br. at 25–32). According to Plaintiff, the ALJ failed to consider the diagnosis and medical opinions rendered by her treating psychiatrist, Jesus Pena-Mejia, M.D., and the Commissioner's psychological examiner, Ernesto Perdomo, Ph.D., whose reports sufficiently established that Plaintiff had "marked limitations" in all four categories of the paragraph B criteria, satisfying the mental Listings identified by the ALJ. (*Id.* at 32).

The Court is not persuaded. Based on Plaintiff's mental impairments, the ALJ specifically identified Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (Trauma- and stressor-related disorders). (R. at 20). The four identified Listings share the same Paragraph B criteria. That is, to meet any of the four Listings, Plaintiff must show that, she had, *inter alia*,

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning [ ]
> 1. Understand, remember, or apply information [ ]
> 2. Interact with others [ ]
> 3. Concentrate, persist, or maintain pace [ ]
> 4. Adapt or manage oneself [ ]

20 C.F.R. pt. 404, subpt. P, App'x 1 §§ 12.03,12.04, 12.06 & 12.14.1. To conduct the step three analysis, the ALJ was not required to "use particular language or adhere to a particular format." *Jones*, 364 F.3d at 505. Nor was the ALJ expected "to make reference to every relevant treatment note in a case." *See Fargnoli*, 247 F.3d at 42. Instead, the ALJ's decision must ensure "sufficient

9

development of the record and explanation of findings to permit meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d. Cir. 2000)).

Here, the ALJ considered each Paragraph B criterium and found that "the medical evidence of record" as a whole indicated that Plaintiff had moderate limitations in each area. (R. at 21–22). The ALJ then pointed to specific evidence in the record, including Dr. Perdomo's opinion, and explained his decision. Indeed, Plaintiff recognizes that the ALJ highlighted Dr. Perdomo's report. (Pl. Mov. Br. at 25–26). As summarized by the ALJ, Dr. Perdomo opined that Plaintiff

> always fe[lt] that people [were] talking about her and [were] against her and staring at her, so she avoid[ed] people and c[ould] not deal with people. Her mood and affect [were] depressed. She was tearful and crying during the evaluation and she reported feelings of sadness, crying spells, insomnia, nightmares, flashback, anger control problems, no desire, no interest, no motivation, and withdrawal behaviors.

(R. at 21). Plaintiff argues that this portion of Dr. Perdomo's report was "[f]ar more relevant" than other evidence the ALJ discussed in his decision. (Pl. Mov. Br. at 25). This argument essentially invites the Court to reweigh evidence that the ALJ specifically considered and accorded less weight, which the Court cannot and does not do. *See Williams*, 970 F.2d at 1182; *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

The Court also disagrees that Plaintiff's ability to interact with her treating practitioners was "completely irrelevant" to her ability to interact with others. (*See* Pl. Mov. Br. at 25). As the Commissioner explains in Appendix 1 Paragraph 12.00E2, "[t]his area of mental functioning refers to the abilities to relate to and work with supervisors, co-workers, and the public." To examine the claimant's ability in this area, the Commissioner considers, *inter alia*, the claimant's ability to "cooperate[ ] with others"; "ask[ ] for help when needed"; "state[ ] own point of view"; "understand[ ] and respond [ ] to social cues (physical, verbal, emotional)"; and "respond[ ] to requests, suggestions, criticism, correction, and challenges." 20 C.F.R. pt. 404, subpt. P, App'x 1

¶ 12.00E2. Plaintiff's ability to interact with her doctors, which necessarily involves cooperating with others, asking for help, and understanding and responding to request and suggestions, is thus illustrative of her ability to interact with others.

Further, Plaintiff again fails to meet her burden of establishing that, even if the ALJ's analysis was lacking, the deficiency was harmful to her. *See Holloman*, 639 F. App'x at 814; *Woodson*, 661 F. App'x at 766. As support for her argument that the ALJ failed to consider her treating psychiatrist Dr. Pena-Mejia's' opinion with regard to her abilities to "interact with others," "concentrate[e], persist[], and [maintain] pace," and "adapt[ ] [or] manage[ ] oneself," Plaintiff points to medical reports dated March 7, 2017, and August 29, 2017, where Dr. Pena-Mejia reported that Plaintiff had "hallucination," "psychosis, agitation/violence," and "hostility/aggressive behavior," and that Plaintiff was "irritable/anxious." (Pl. Mov. Br. at 26 (citing R. at 515–17). Plaintiff also argues that Dr. Pena-Mejia prescribed Plaintiff with Risperdal, Zoloft, Clonazepam, and Ambien for her conditions. (*Id.* (citing R. at 480 & 513)). These diagnoses, therapies, and assessments, according to Plaintiff, established "marked limitations" in all four Paragraph B categories of the identified Listings. (*Id.* at 32).

However, Plaintiff does not even attempt to explain how these recorded conditions and treatments, without more, sufficiently establish that Plaintiff's impairment or combination of impairments satisfy the Listing requirements. *See Jones v. Sullivan*, 954 F.2d 125, 128 (3d Cir. 1991) (declining "to create a presumption that a mere diagnosis of alcoholism, without more, renders an applicant eligible for benefits under the Social Security Act"). For example, while Plaintiff argues that she received "Ambien for insomnia/sleep disorder," her medical records consistently indicated that she reported to her psychiatrist that she slept well. (R. at 514 ("sleeping is fair"), 516 ("sleeping good"), 518 ("sleeping and eating well"), 520 ("[g]ood sleeping and good

eating"), & 522 (same)). As another example, while Plaintiff reported that she had "some anx[iety]" in March 2017 (R. at 514), she repeatedly told her doctor, from August 2017 to February 2018, that she was not anxious (*id*. at 516, 518, 520 & 522). Plaintiff thus failed to point to specific evidence that is sufficient to show that she should succeed at step three.

Accordingly, the Court finds that, contrary to Plaintiff's argument, the ALJ's decision, read as a whole, reflect "sufficient development of the record and explanation of findings" and is supported by substantial evidence. *See Burnett*, 220 F.3d at 119; *Jones*, 364 F.3d at 505. But even if the decision contains any error, the error would be harmless. *See Woodson*, 661 F. App'x at 766.

### D. RFC Determination

Finally, Plaintiff argues that the RFC finding was not based on substantial evidence and that it was not "explained on the basis of any evidence." (Pl. Mov. Br. at 32). "After careful consideration of the entire record," the ALJ concluded that Plaintiff had the following RFC:

> The claimant is capable of *exertional* demands of light work as defined in 20 CFR 404.1567(b) and 416.967(b), with exceptions. The claimant is capable of lifting/carrying a maximum of 20 pounds at a time and frequently lifting/carrying up to 10 pounds. Regarding the *manipulative* demands of work, the claimant cannot perform continual and repetitive fine fingering tasks. Regarding the *mental* demands of work, the claimant is capable of simple and repetitive tasks. She is capable of minimal contact with supervisors and co-workers. She cannot have contact with the general public.

(R. at 22–23) (emphasis in original).

In his typical style, Plaintiff's counsel divided the ALJ's RFC determination into five elements and, in a series of hyperbolic questions, argues that the ALJ failed to explain any of these elements. For example, with respect to the ALJ's finding that Plaintiff was capable of doing light work, counsel asks "[h]ow long can Plaintiff sit, stand, and walk?" (Pl. Mov. Br. at 36). With regard to the ALJ's finding that Plaintiff cannot perform continual and repetitive fine fingering

12

tasks, counsel asks, *inter alia*, "what is it about [P]laintiff's sensory neuropathy and carpal tunnel syndrome in both hands that encumbers fine manipulation but not gross manipulation?" (*Id.* at 39). With the ALJ's finding that Plaintiff was capable of simple and repetitive tasks, counsel asks: "where does the decision provide a rationale for its seminal finding that plaintiff's psychotic, depressive, traumatic and panic disorders would allow her the ability to sustain a 40-hour workweek just as long as she is performing unskilled work (simple repetitive tasks)?" (*Id.*).

Plaintiff seems to suggest that the ALJ must engage in a formulaic explanation of his RFC decision. The law does not hold the ALJ to such a rigid standard. As discussed above, an ALJ need not "adhere to any set format for explaining his analysis so long as there is 'sufficient development of the record and explanation of findings to permit meaningful judicial review.'" *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162 (3d Cir. 2008) (quoting *Jones*, 364 F.3d at 505). While an ALJ is required to consider all evidence before him, *Burnett*, 220 F.3d at 121, an ALJ need not discuss in her opinion "every tidbit of evidence included in the record," *Hur v. Barnhart*, 94 Fed. App'x. 130, 133 (3d Cir. 2004).

Here, considering the record as a whole, the Court finds that the ALJ's analysis was sufficient to allow meaningful review and was supported by substantial evidence. *See Jones*, 364 F.3d at 505. The ALJ first addressed Plaintiff's subjective report of symptoms presented at the hearing, where she stated that, *inter alia*, she had a bulging disc and carpal tunnel syndrome, because of which she could not sit or stand for too long and could only work with her hands for about ten to fifteen minutes. (R. at 23). She also stated that she suffered from HIV and had depression because of her HIV infection. (*Id.*). As a result of her depression, she did not like being around too many people and, while she went to appointments and did grocery shopping, she

mostly spent time in her room. (*Id.*). Plaintiff also stated that she had heard voices, for which she took medications. (*Id.*).

The ALJ then considered the evidence in the record and concluded that Plaintiff's seven severe impairments, namely her back pain, obesity, carpel tunnel syndrome, PTSD, schizoaffective disorder, depressive type, and anxiety, caused "some resulting limitations." (*Id*. at 24). In so finding, the ALJ discussed Dr. Perdomo's consultative psychological evaluation from February 2016, and a March 2016 record from Luis Benalcazar, M.D., who reported that Plaintiff had "bilateral hand pain." (*Id.* (citing R. 330–32 & 338)). Contrary to Plaintiff's argument that the ALJ "never consider[ed] HIV in [the] RFC calculus," (Pl. Mov. Br. at 19 n. 3), the ALJ also discussed a June 2016 report from Douglas A. Taylor, M.D., who treated Plaintiff primarily for her HIV infection from at least April 2015 to May 2018 (*see* R. at 329 & 437–496). (*Id.* at 25). Dr. Taylor's report included details of Plaintiff's conditions relating to her HIV infection and noted that Plaintiff was "negative for depression." (*See id.* at 437–496). The ALJ thus concluded that that Plaintiff's HIV did not cause more than minimal limitations in her ability to perform work. (*Id.* at 25).

Ultimately, the ALJ held that Plaintiff's description regarding "the intensity, persistence[,] and limiting effects" of her conditions were not "entirely consistent" with the medical evidence in the record. (*Id.* at 23). Relevant here, despite the detailed summary of Dr. Perdomo's February 2016 report, the AJL gave this report partial weight and discounted Dr. Perdomo's opinion that Plaintiff's mental impairments "would significantly affect her ability to function in the occupational and social spheres of life." (*Id*. at 25; *see id.* at 332). The ALJ explained that, while Dr. Perdomo's evaluation was based on personal examination of Plaintiff, this report lacked a complete function-by-function analysis regarding Plaintiff's "ability to handle the mental demands

14

of work-related activities." (*Id.* at 25). Plaintiff argues that the ALJ rejected Dr. Perdomo's opinion "for a clearly made-up reason" that Dr. Perdomo failed to fill out a "function-by-function form" that was never sent to him. (Pl. Mov. Br. at 30–31). Plaintiff either misunderstands or mischaracterizes the ALJ's reasoning. The ALJ accorded partial weight to Dr. Perdomo's opinion not because Dr. Perdomo failed to use a function-by-function form or failed to satisfy a *post-facto* requirement, but because Dr. Perdomo's opinion regarding Plaintiff's mental capacity for work-related activities lacked sufficient explanation. *See* 20 C.F.R. §§ 404.1527(c)(3) & 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions."). The Court thus finds no error in the ALJ's reasoning for discounting portions of Dr. Perdomo's opinion.[2]

The ALJ also gave partial weight to the reports of the agency's consultants and discredited their opinions that Plaintiff's HIV and asthma were severe impairments. (R. at 25.; *see also id.* at 112, 127, 143 & 161). Notably, in so holding, the ALJ highlighted that the state agency's consultants "did not have the benefit of the latest medical evidence nor the benefit of observing [Plaintiff] personally." (*Id.* at 25). Presumably, this "latest medical evidence" included evidence submitted by Plaintiff on or after May 30, 2018, which includes medical records from Dr. Taylor between January 10, 2017, and May 29, 2018, and from Dr. Pena-Mejia between March 7, 2017,

---

[2]   Moreover, with regard to a similar comment from Dr. Pena-Mejia, who in a one-page evaluation report dated April 20, 2015, opined that Plaintiff was "unable to engage in any gainful employment and/or occupational training of any kind" (R. at 328), the ALJ accorded this report little weight because Dr. Pena-Mejia opined on an issue, namely, "the ultimate determination as to disability," that is reserved to the Commissioner. (*Id.* at 26). The Court agrees and finds that the same reasoning applies to portions of Dr. Perdomo's opinion. *See* 20 C.F.R. §§ 404.1527(d)(1), 3 & 416.927 (d)(1), (3) (stating that "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," which "is an issue reserved to the Commissioner").

15

and February 27, 2018.³ (*Id.* at 475 & 497). Accordingly, contrary to Plaintiff's argument that her treating psychiatrist's and treating physician's opinions were virtually eliminated from the ALJ's decision (Pl. Mov. Br. at 27), the ALJ indeed specifically rejected the agency consultants' opinions based on the latest medical reports from Plaintiff's treating physician and treating psychiatrist when conducting the RFC analysis.

Ultimately, while Plaintiff points to some evidence in the record to support her challenge to ALJ's analysis at step four, the Court finds that the evidence Plaintiff relies on does not demonstrate that she should have succeeded at step four. *See Shinseki*, 556 U.S. at 409 ("[T]he party that seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted."); *Rutherford*, 399 F.3d at 533 (stating that "a remand is not required here because it would not affect the outcome of the case"). The Court thus finds that the ALJ provided sufficient explanations as to the weight he was attributing to the opinion evidence and further finds that the ALJ's RFC determination was supported by substantial evidence in the record as whole. *See Fargnolii*, 247 F.3d at 43 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence.") (citing *Burnett*, 220 F.3d at 121).

---

³ As the ALJ's decision noted, Plaintiff submitted or informed the ALJ of these medical records less than five business days before the hearing before the ALJ, who nonetheless admitted the reports into the record. (*Id.* at 17; *see also id.* at 475 & 497).

16

## IV. CONCLUSION

For the foregoing reasons, the Court AFFIRMS the decision of the Commissioner. An appropriate Order accompanies this Opinion.

Date: April 30, 2021.

                                                *s/Esther Salas*
                                                **Esther Salas, U.S.D.J.**